[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12344
_____

D.C. Docket No. 3:12-cr-00010-HLA-TEM-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JONAS CORONADO-CURA,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 26, 2013)

Before CARNES, HULL, and FAY, Circuit Judges.

CARNES, Circuit Judge:

This is the latest in a seemingly endless stream of cases raising "aggravated

felony" and "violent felony" issues.  The particular issue presented is whether the

crime of simple vehicle flight as defined in Fla. Stat. § 316.1935(2) is an "aggravated felony" under § 2L1.2(b)(1)(C) of the sentencing guidelines. Earlier this year we held that the crime is a "violent felony" under the Armed Career Criminal Act (ACCA). United States v. Petite, 703 F.3d 1290, 1291 (11th Cir. 2013). But is it also an "aggravated felony" under § 2L1.2(b)(1)(C) of the sentencing guidelines? Yes, it is.

## I.

Jonas Coronado-Cura pleaded guilty to illegally reentering the United States after having been removed to Mexico, in violation of 8 U.S.C. § 1326. The presentence investigation report assigned a base offense level of 8. See United States Sentencing Guidelines § 2L1.2(a) (Nov. 2011). The PSR also indicated that Coronado-Cura had a felony conviction in Florida for fleeing or attempting to elude a police officer (also called simple vehicle flight), in violation of Fla. Stat. § 316.1935(2). The sentencing guidelines provide for enhancements when a defendant convicted of unlawfully entering or remaining in the United States has a prior felony conviction. See U.S.S.G. § 2L1.2(b). The amount of the enhancement depends on the type of felony. Id. The PSR concluded that because of his Florida conviction, Coronado-Cura should receive a 4-level enhancement under U.S.S.G. § 2L1.2(b)(1)(D), which applies to felony offenses not covered by § 2L1.2(b)(1)(A)–(C). The PSR also gave Coronado-Cura a 2-level reduction for

2

acceptance of responsibility, resulting in a total offense level of 10.  That offense level combined with Coronado-Cura's criminal history category of IV resulted in a guidelines range of 15 to 21 months imprisonment.

The government objected to the PSR, arguing that Coronado-Cura should have received an 8-level enhancement under § 2L1.2(b) because his Florida conviction for simple vehicle flight qualifies as an "aggravated felony" under § 2L1.2(b)(1)(C).  At sentencing, the district court sustained the government's objection, finding that as defined in Fla. Stat. § 316.1935(2) the crime of simple vehicle flight necessarily involves a "substantial risk of violent force" and therefore is an aggravated felony.  The court adopted the PSR to the extent that it assigned a base offense level of 8.  To that base the court added 8 levels for the prior conviction.  It subtracted 4 levels for participation in the fast track program and another 3 levels for acceptance of responsibility.  The result (8 + 8 – 4 – 3) was an offense level of 9, which combined with his criminal history category of IV to give Coronado-Cura a guidelines range of 12 to 18 months imprisonment.  The court sentenced him to 18 months imprisonment.  This is his appeal.

## II.

Coronado-Cura's sole contention is that he should not have gotten an 8-level enhancement under U.S.S.G. § 2L1.2(b)(1)(C) because his Florida conviction for

3

simple vehicle flight is not an aggravated felony.  The crime of simple vehicle flight is defined in Fla. Stat. § 316.1935(2), which provides:

> Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated commits a felony of the third degree, punishable as provided in s. 775.082, 775.083, or s. 775.084.

Fla. Stat. § 316.1935(2).  The elements of the crime are: "(1) an officer in a law enforcement patrol vehicle, with its jurisdictional markings prominently displayed and its siren and lights activated, orders the motorist to stop; and (2) the motorist willfully flees or attempts to elude the officer."  Petite, 703 F.3d at 1292.

For § 2L1.2(b)(1)(C) enhancement purposes, "aggravated felony" has the meaning given to the term in section 101(a)(43) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43).  U.S.S.G. § 2L1.2 cmt. n.3(A).  Section 101(a)(43), in turn, includes in its definition of aggravated felony "crime of violence," as defined in 18 U.S.C. § 16.  8 U.S.C. § 1101(a)(43)(F).  And "crime of violence" in § 16 is defined to include any felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 16(b).  By that circuitous route a § 2L1.2(b)(1)(C) "aggravated felony" is one that, by its nature, involves a substantial risk that physical force will be used against the person or property of another during the crime.

4

We held in Petite that a conviction for simple vehicle flight under Fla. Stat. § 316.1935(2) falls within the definition of "violent felony" under the ACCA.  That definition includes, among other things, any felony that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added).  We recognized in Petite that the Supreme Court's decision in Sykes v. United States, — U.S. —, 131 S.Ct. 2267 (2011), had abrogated our earlier decision in United States v. Harrison, 558 F.3d 1280 (11th Cir. 2009), which had held that simple vehicle flight was not a violent felony under the ACCA.  See Petite, 703 F.3d at 1297–99.  We reasoned that "[t]he Supreme Court [in Sykes] could not have been clearer in concluding that vehicle flight from a law enforcement officer is an extraordinarily risky enterprise" because it ordinarily results in a "dangerous confrontation between the offender and the law enforcement officer."  Id. at 1296–97.  We said of the Sykes decision:

> A common theme pervading the Supreme Court's risk analysis was that, in assessing the degree of risk presented by the crime of vehicle flight, we are obliged to look beyond the driving conduct of the offender alone.  The calculus also must take into account the obvious fact that vehicle flight from a law enforcement vehicle — in direct defiance of an officer's orders — necessarily provokes a confrontational response from the officer.  The confrontational act of simple vehicle flight in violation of Florida law arises in a context where both the offender and the officer are in vehicles that can cause serious potential risk of injury to another.

5

Id. at 1296 (citations and quotation marks omitted). Applying the Sykes risk analysis, we concluded that simple vehicle flight under Fla. Stat. § 316.1935(2) is a violent felony for ACCA purposes. Id. at 1300.

To determine whether Petite's extension of Sykes should be extended to this case, we compare the definition of violent felony under the ACCA with the definition of aggravated felony under the sentencing guidelines. The more comparable the definitions, the more compelling the conclusion that simple vehicle flight should be held to be an aggravated felony for § 2L1.2(b)(1)(C) purposes, just as it was held to be a violent felony for ACCA purposes.

The definitions of aggravated felony and of violent felony both focus on the risk that is created by the criminal conduct. As to the degree of risk, the guidelines require conduct that "involves a substantial risk," while the ACCA requires conduct that "presents a serious potential risk." There is no material difference in those risk levels. In describing what is protected from the risk, however, the two definitions do differ. The guidelines enhance punishment to protect "the person or property of another" from physical force, while the ACCA enhances punishment to protect against "physical injury to another" but not to property. The guidelines definition is broader. It covers what the ACCA definition does and then some, the additional "some" being injury to property as well as person. The difference is significant with a vehicle flight crime because the confrontational nature of the

6

crime risks injury to property as well as to persons. See Sykes, 131 S.Ct. at 2274 ("Between the confrontations that initiate and terminate the incident, the intervening pursuit creates high risks of crashes."). Many car crashes injure cars and other property but not people.

The guidelines definition is broader in another way. The ACCA definition includes enumerated crimes — burglary, arson, extortion, and crimes involving the use of explosives — while the guidelines do not. "Under the ejusdem generis canon of construction, where general words follow a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated." Allen v. Thomas, 161 F.3d 667, 671 (11th Cir. 1998) (quotation marks omitted). It follows that a violent felony under the ACCA's residual clause must present a risk that is comparable to the risk posed by the enumerated crimes. See Petite, 703 F.3d at 1294. The guidelines definition is not limited in that way because it does not contain any enumerated crimes.

Coronado-Cura counters that the § 2L1.2(b)(1)(C) definition is narrower because it requires that the risk of physical force occur "in the course of committing the offense" while the ACCA definition does not. He argues that we should look only at the conduct of the offender, and not at the risk created by the response of law enforcement to that conduct. That's wrong. While the guidelines definition does require that there be a substantial risk that physical force will be

7

used "in the course of committing the offense," nothing in that definition says that the physical force must come from the offender. The risk the guidelines seek to avoid is the risk that force will be used against the person or property of another, and force is force regardless of whether it comes from the fleeing offender or the pursuing officers.

For the reasons we have discussed, the definition of violent felony for ACCA purposes is narrower than, and fits within, the definition of aggravated felony for § 2L1.2(b)(1)(C) purposes. From that recognition comes the major premise of the syllogism that decides this case: Any crime that is an ACCA violent felony is also a § 2L1.2(b)(1)(C) aggravated felony; the Florida crime of simple vehicle flight is an ACCA violent felony; therefore, that crime is also a § 2L1.2(b)(1)(C) aggravated felony.

**AFFIRMED.**